HOMER R. SCOVILLE, ADMINISTRATOR, vs. JOHN C. MASON
ET AL.

First Judicial District, Hartford, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

A testator, who wrote his own will, gave to his county hospital "my
farm, live-stock, tools and household furniture," to do with as the
hospital authorities thought best, and "all my moneys, bonds,
notes, and money in savings banks," to be held by the directors as a
fund bearing his name, "the interest and income to be used for the
benefit of said hospital." In a suit to construe the will it was
held : —

1. That under the term "household furniture," the testator's silver
   spoons and odd pieces of silverware, of no great value, passed to
   the hospital.
2. That the wearing apparel did not pass under that or any other ex-
   pression in the will, but became intestate estate and went to a
   maternal uncle, the testator's next of kin.
3. That the "farm" included not only the homestead, but also three
   other lots not far distant, all of which were used by the testator in
   his business of farming, and together constituted his farm as he
   had described it to a real estate agent for purposes of sale.
4. That while the expression "all my moneys, bonds, notes and money
   in savings banks " would not ordinarily include railroad stock and
   scrip, yet, when read in the light of the circumstances under which
   the will was made, it was reasonably clear that the testator in-
   tended it should embrace such property, and therefore it must be
   construed accordingly.

Argued January 5th—decided March 3d, 1904.

SUIT to determine the construction of the will of Stephen
A. Watson of Harwinton, deceased, brought to and reserved
by the Superior Court in Litchfield County, *Elmer, J.,* upon
a finding of facts, for the advice of this court.

The testator, a farmer in Harwinton in this State, died in
November, 1902, leaving the will here in question, executed
in September, 1902. The entire will was written by himself,
and is as follows : —

"In the name of God amen : I, Stephen A. Watson of the
town of Harwinton, county of Litchfield, State of Connec-
ticut, being of sound mind and memory and considering the

uncertainty of life therefore do make and declare this my
last will and testament that is to say, first after all my debts
are paid I give and bequeath to my cousins Charlotte Butler,
wife of Dan C. Merrill, and Frank R. Mason, son of John
C. Mason, five hundred dollars each. to the Litchfield County
Hospital situated in the town of Winchester, my farm, live-
stock, tools and household furniture to do with as the di-
rectors of said hospital think best and all my moneys, bonds
notes and money in savings banks to be held by the direct-
ors of the said hospital to be known as the S. A. Watson
fund, the interest and income to be used for the benefit of
said hospital."

The summary of the inventory and appraisal of the tes-
tator's estate, as it appears in the record, is as follows:

Sundry articles, personal property, tools, hay,
    provisions, clothing, etc.,   .   .   .  $    590.29
Live stock,  .   .   .   .   .   .   .    277.00

### REAL ESTATE.

| | | |
|---|---:|---:|
| Homestead, 60-acre tract, . | $ 1,300.00 | |
| Orchard and meadow, 12-acre tract, | 300.00 | |
| North piece, 31-acre tract, . . | 300.00 | |
| Wood lot, 35-acre tract, . . . | 300.00 | 2,200.00 |

### SECURITIES.

Certificate of 5 shares preferred stock, of $100
    each, of Boston & New York Air Line
    R. R. Co., No. A596, issued May 12, 1879
    (mentioned in the complaint),  .  .  $    550.00
Scrip of above company,   .   .   .   .    1.00
Certificate of 18 shares stock, of $100 each, of
    Hartford & Connecticut Western R. R.
    Co., issued October 8, 1881 (mentioned
    in the complaint), .   .   .   .   .    810.00
23 separate real estate mortgage coupon bonds,
    aggregating the sum of .   .   .   .    8,190.00

| | | |
|---|---|---:|
| Amount brought forward, . . . | | $12,618.29 |
| 4 debenture and trust bonds, . . . | | 900.00 |
| 18 separate mortgages and mortgage notes, . | | 9,680.00 |
| 3 promissory notes, . . . . . | | 151.00 |
| 4 separate savings bank deposits, amounting to | | 10,960.31 |
| Total inventory and appraisal . . | | $34,309.60 |

The testator was never married, and his nearest of kin and only heir at law is his maternal uncle, John C. Mason of Mansfield in Tolland county, a man now over eighty years old.

Included in the inventory of the testator's estate were numerous articles of wearing apparel, appraised in the whole at the sum of $43.80, and certain articles of silverware, appraised at the sum of $8, making in all $51.80. All of these things are specifically enumerated and described in Exhibit A annexed to the complaint.

*Homer R. Scoville,* for the plaintiff.

*Richard T. Higgins,* for the Litchfield County Hospital.

*William A. King,* for John C. Mason.

TORRANCE, C. J. The questions in this case are in substance these: (1) Whether the articles in Exhibit A pass to the Hospital under the will. (2) Whether all the real estate in the inventory passes to the Hospital under the will. (3) Whether the shares of railroad stock, and the "scrip," in the inventory, pass to the Hospital under the will. (4) If any of the property of the testator is not disposed of by will, to whom does it pass under the statute of distribution? These questions will be considered in the order stated.

Exhibit A contains a list of numerous articles of wearing apparel, of no great value, and of a few silver spoons and odd pieces of silverware, also of little value. It is claimed by the Hospital that all the things in Exhibit A pass to it, by the will, under the words "household furniture." We think these words include the silverware; *Crossman* v. *Baldwin,* 49 Conn.

490; but not the articles of wearing apparel. Comprehensive as the words "household furniture" undoubtedly are, they are not yet elastic enough to include mere garments and articles of clothing. The wearing apparel in Exhibit A is not disposed of by the will.

The real estate inventoried consists of four separate pieces of land in the town of Harwinton. Upon one of these pieces, containing sixty acres, was the homestead of the testator. Separated from the homestead land by a highway only, was a lot containing about twelve acres, and distant from the homestead land not over six hundred feet was a thirty-one acre tract. These three pieces of land were conveyed to the testator by one deed in 1861. The other lot of land, containing about thirty-five acres, distant from the homestead land about eight hundred feet, was conveyed to the testator in 1889. In connection with his homestead land, the testator used the twelve-acre lot for tillage, the thirty-one acre lot for pasture and tillage, and the thirty-five acre lot for wood land; and in 1900 in describing his farm to a real estate agent for purposes of sale, he included all of these four pieces of land. The words of the will, descriptive of the land devised to the hospital, are "my farm." The heir at law claims that these words describe the homestead land alone, and do not include the three outlying lots.

This claim is not tenable. These four lots of land were all used and occupied by the testator in his lifetime, in carrying on the business of farming, as one farm, had been so used and occupied by him for years before he wrote this will, and were called by him his farm. When he came to make his will and to give his real estate to the Hospital, he describes the subject-matter of the gift as "my farm"; using the same term that he used to the real estate agent in describing these four pieces of land. Reading these descriptive words in the light of the circumstances in which the testator wrote them, we think that it is clear beyond question that they include and were intended to include the four pieces of land.

The next question is whether the railroad stock and the scrip are given to the Hospital by the will. With reference

to this property, the finding is that the testator inherited
from his father certain bonds issued by the two railroad
companies mentioned in the inventory, which bonds were
convertible into the stock of said companies; that the tes-
tator, in 1879 and in 1881, converted said bonds into the
stock and scrip in question.

The Hospital claims the stock and scrip under these words:
" All my moneys, bonds, notes and money in savings banks."
It must be conceded that these words, in their ordinary mean-
ing, do not include the railroad stock and scrip; but when
read in the light of the circumstances in which they were
written, we think they should be held to include that prop-
erty. The will is as commendably brief as it is broadly
comprehensive, and it clearly shows, in the light of the facts
as they appear of record, a purpose on the part of the tes-
tator to dispose of his entire estate, and to give substantially
the whole of it to the Hospital. He first provides for the
payment of all his debts, and the payment of two small leg-
acies, and then he disposes of his live stock, tools, house-
hold furniture and land. This leaves to be disposed of, the
remainder consisting of the notes, bonds, money in savings
banks, and the railroad stock and scrip mentioned in the in-
ventory; this stock and scrip being the product and avails
of bonds. The will was made only a short time before he
died, and apparently he had no money other than that on
deposit in the savings banks. He desires to turn this re-
mainder over to the Hospital as a trust fund, to be called
by his name, the income of which fund should be used for
hospital purposes. When, under such circumstances, he
came to put this desire into words, and to describe the prop-
erty of which the remainder consisted, he used the compre-
hensive words " all my moneys, bonds, notes and money in
savings banks." Reading these words in the light of the
circumstances in which they were written, we think the in-
ference is a reasonable one that the testator intended them
to include the railroad stock and scrip, as well as all his
money, notes, and bonds; and we think that such intention
is sufficiently expressed in the will.

As John C. Mason appears to be the next of kin and sole heir at law of the testator, the property not disposed of by the will passes to him under the statute of distributions.

The Superior Court is advised (1) that under the will the shares of stock and the scrip, described in the inventory, pass to the Hospital as part of the trust fund; (2) that the silverware described in Exhibit A belongs to the Hospital, but that the wearing apparel, therein described, is intestate estate; (3) that all the real estate described in the inventory belongs to the Hospital under the will; (4) that John C. Mason takes, under the statute, such portion of the estate of the testator as is not disposed of by the will.

No costs will be taxed in this court.

In this opinion the other judges concurred.