SPENCER CRANDOLL, complainant,

*v.*

JAY S. GARRISON et ux., et al., defendants.

[Decided April 4th, 1932.]

*Messrs. Tuso & Stanger,* for the complainant.

*Mr. T. Millet Hand,* for the defendant Francis Garrison.

*Mr. Charles A. Bonnell,* for Barckley Grace, Dessa Grace, Jay S. Garrison, Jacob Garrison, individually and as executors of William F. Garrison, deceased, Florence Garrison, Mame Garrison, William Garrison and Miller H. Garrison.

INGERSOLL, V. C.

The court is asked to construe a clause of the last will of one William F. Garrison, which reads as follows:

"Fourteenth: I do give, will, devise and bequeath to my son Belford Garrison my farm and cottage, which I heired of my father, to him and to his heirs and assigns forever subject to the life estate of my beloved wife hereinbefore stated. I do also, give, will and bequeath to him the household goods, and furniture together with all stock and farming utensils on the said farm to him and to his heirs and assigns forever subject to the life estate of my beloved wife hereinbefore stated. Also the sum of fifteen hundred dollars payable in two years from my decease."

The wife of William F. Garrison predeceased him.

William Garrison, who was also known as William Garretson, the father of William F. Garrison, acquired the lands and premises described in the bill of complaint by five separate deeds and at the time of his death was the owner thereof. He died intestate, leaving him surviving as his heirs-at-law, Enoch S. Townsend and Phoebe, his wife, John W. Swain and Mary, his wife, Jesse H. Diverity and Elizabeth, his wife, James Forman and Deborah, his wife, Griffin Smith and Emma, his wife, Essac S. Ludlam and Sallie, his wife, Jacob B. Price and Hattie, his wife, Almarin Tomlin, William G. Townsend and Charlotte, his wife, John Bennett and Mary E., his wife, Bessie Townsend, William G. Tomlin and Ella, his wife, Bessie E. Stevens and Thomas H. Stevens and William F. Garrison.

All of these parties executed two separate quit-claim deeds to the said William F. Garrison, one dated January 20th, 1884, and recorded in the clerk's office of Cape May county in book 65, page 77, and the other dated April 25th, 1895, and recorded in the said clerk's office in book 117, page 472.

The said Belford Garrison took possession of said property and on or about the 16th day of January, 1907, conveyed the land and premises to the complainant.

The defendants contend that this entire tract of land is not included by the terms of the will in question. There can be no doubt that at the time of William F. Garrison's death he was the owner of all the lands and premises described in the bill of complaint. He had obtained these by virtue of a large number of deeds, and although the outside boundary lines of these premises are very irregular, it is all within one tract and capable of a single description, and although some is meadowland, some upland capable of cultivation, some swampland incapable, in its present condition, of cultivation, some woodland, and one small section, at one time, used as a place for the building of vessels, there seems to be no question but that it is entirely included in the general terms of "my farm and cottage."

The late Chief-Justice Beasley in *Evens* v. *Griscom, 42 N. J. Law 579,* in approving of *Drew* v. *Drew, 28 N. H. 489,* said: "The devise in this reported case was expressed in these words: 'All my homestead farm in Dover, being the same whereon I now live, and the same that was devised to me by my honored father.'" It seems that the testator had received only a part of the homestead farm from his father. The court held the whole of it passed by this language. This result, I think, was clearly right. The land devised was specifically devised by name. It was the homestead farm.

A reading of the case of *Evens* v. *Griscom, supra,* clearly indicates that words such as were here employed were subject to the limitation of the phrase "conveyed to me by the heirs of my deceased wife," and a portion of "my farm and plantation" which had not been conveyed by his wife, was not included in the devise.

It will be noticed that the opinion of the court of errors and appeals in this case was upon a vote of seven to five in a very learned dissenting opinion Mr. Justice Van Syckel cites cases sustaining the dissenting view that the words descriptive of the object such as were there used should be discarded, but in each opinion it is agreed that without the descriptive words "all my farm near Cropwell," if alone, included the entire number of all parcels thereof.

In *Kanouse* v. *Central Railroad Co., 97 N. J. Law 185,* it was held that the bequest of the remainder of the homestead farm "as hereinafter described," where the description was incorrect, meant "exactly what she said" when she gave the remainder of her homestead farm, and that it was not limited by the defective description.

Mr. Justice Swayze quoted Chief-Justice Beasley as saying, in *Evens* v. *Griscom, supra,* "the description of all the farm by name incontestably designated the whole by such farm so that the first description called for the entire thing and the second description for only a part of such entire thing. The two descriptions were therefore irreconcilable and the latter was properly rejected." This quotation from Chief-Justice Beasley was in reference to the case of *Goodtitle* v. *Southern, 1 M. & S. 299,* and the quotation is made by the chief-justice in saying that that case is plainly inapplicable to the case in hand, as the two descriptions could not stand together.

In *Scoville* v. *Mason,* supreme court of errors of Connecticut (*76 Conn. 459; 57 Atl. Rep. 114*), in the construction of a will wherein the testator had devised "my farm," it was held that said devise included not only the homestead but also other outlying lands where those lands had all been used by the testator in carrying on the business of farming, he having referred in business transactions to the same as "his farm." The court said: "Reading these descriptive words in the light of the circumstances in which the testator wrote them, we think it is clear beyond question that they include, and were intended to include, the four pieces of land."

An examination of the opinion shows that the real estate inventoried consisted of four separate pieces of land. Upon

one of these pieces, containing sixty acres, was the homestead of the testator. Separated from the homestead land by a highway, only, was a lot containing about twelve acres, and distant from the homestead land not over six hundred feet was a thirty-one acre tract. These three pieces of land were conveyed to the testator by one deed. The other lot of land, containing about thirty-five acres, distant from the homestead land about eight hundred feet, was conveyed to the testator nearly thirty years after the other land. In connection with his homestead land, the testator used the twelve acre lot for tillage, the thirty-one acre lot for pasture and tillage, and the thirty-five acre lot for woodland. It follows that the several tracts of land described in the complainant's bill constitute "my farm and cottage" as mentioned.

The complainant, however, alleges that on October 20th, 1905, J. Spicer Leaming, master, undertook to sell part of the premises described in the bill of complaint to Edwin P. Garrison, who died, and the said J. Spicer Leaming, having been designated the master of the settlement of the estate of Edwin P. Garrison, the said master sold part of the said lands described in paragraph 4 of the bill of complaint to Francis Garrison. Also, that on the said 20th day of October, 1905, said J. Spicer Leaming sold part of the lands described in paragraph 4 of the bill of complaint to Francis Garrison, one of the defendants herein, as part of the estate of William F. Garrison.

The said sale made by J. Spicer Leaming as special master of the court of chancery was, by virtue of a decree for sale, founded on a bill for the partition of the lands therein described, wherein it was ascertained that the complainants and defendants therein were owners of the lands and premises therein described, in fee.

All of the parties in interest appeared to have been properly either complainants or defendants in said bill for partition, and they and their privies are bound by the decree filed July 12th, 1905, although the said Belford Garrison was at that time a minor.

A second bill for partition, praying for the partition of lands therein described, was filed January 28th, 1906, praying for the partition of certain lands of which the said William F. Garrison died seized, which resulted in a decree declaring that the parties therein were owners of the lands and premises therein described, in fee.

In *Sites* v. *Eldredge, 45 N. J. Eq. 632,* Vice-Chancellor Pitney says: "But, further: here it seems to me that the two infant children are as much bound by the partition proceedings as if they had been adults. They were regularly brought. into court and guardians appointed for them. The title was adjudged to be in them as tenants in common with their adult sister, and a proper share of the proceeds of the sale paid to the guardian of each, and they have each, since their majority, accepted from the guardian the sum so awarded. No court, under the circumstances, would appoint new trustees to execute the power of sale" (in that case found in the will) "and this court would not permit the two children, who were infants when the partition was made, to take any benefit from a sale of the same premises by a new representative of their grandfather, under this power. The complainant in the partition suit is equally estopped, for she conveyed to the devisee of the complainant."

This court having decreed that the title to the lands and premises described in either or both of the partition bills was in fee in the respective complainants and defendants, the conveyance to Crandoll of that portion of said land only conveyed such interest, if any, as the grantor might have had in said lands and premises.

A decree will be advised in accordance with these views. If counsel cannot agree upon the description of the land properly to be included in this decree, the court will either take additional testimony or refer same to a master for a report.